Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5736 | **DATE** | 5/30/2001 |
| **CASE TITLE** | Robert A. Ryan vs. Andrew J. Kontrick | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Bankruptcy Court's grant of summary judgment on Count I is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 3 1 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 21 |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING 01 MAY 30 PM 12: 55 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAR 30 2001

Judge Harry D. Leinenweber
U.S. District Court

ROBERT A. RYAN,

    Plaintiff/Appellee,

v.

ANDREW J. KONTRICK,

    Defendant/Appellant.

Case No. 00 CV 5736

Judge Harry D. Leinenweber

(Appeal from adversary proceeding No. 98 113, Hon. John D. Schwartz, Bankruptcy Case No. 97 B 10353)

DOCKETED
MAY 3 1 2001

## MEMORANDUM OPINION AND ORDER

Andrew Kontrick ("Kontrick") filed for bankruptcy on April 4, 1997, and Robert Ryan ("Ryan") filed a seven-count complaint objecting to discharge on January 13, 1998. Ryan moved for summary judgment on Counts I-IV, and the bankruptcy court granted the motion on the "family account" claim in Count I and denied the motion as to Counts II-IV. Kontrick appealed the bankruptcy court's decision to this court.

### INTRODUCTION

The following facts are taken from the bankruptcy court's Amended Memorandum Opinion.

Kontrick and Ryan are both physicians. In 1983 Kontrick joined Ryan's medical practice, and in 1989 he became a stockholder. Various disputes arose between them, and in July 1992 an arbitrator issued an award in favor of Ryan in the amount of $47,157.00. In October 1992, the parties were engaged in a second arbitration. In April 1993, Ryan attempted to settle all disputes



between them for about $96,501.00, which Kontrick rejected. In June 1993, Ryan sought to collect the award from the first arbitration and served Kontrick with a citation to discover assets. In July 1993, however, Kontrick paid Ryan the full award in the first arbitration plus some additional fees and costs. In May 1995, the arbitrator entered an award for $519,324.00 in the second arbitration, which included punitive damages. The Illinois Appellate Court later reversed and vacated the award of punitive damages and the rate of prejudgment interest while affirming the remainder of the award. *See Ryan v. Kontrick*, 304 Ill. App. 3d 852, 710 N.E. 2d 11 (1st Dist. 1999). Kontrick made a settlement offer to Ryan of $193,000.00, which Ryan rejected and he proceeded to file another citation to discover assets.

On April 4, 1997, Kontrick filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code"). On January 13, 1998, Ryan filed his original adversary complaint with the court consisting of four counts seeking to deny Kontrick his discharge pursuant to §§ 727(a)(2), (3), (4) and (5), and three counts seeking a finding that Kontrick's debt to Ryan was nondischargeable pursuant to §§ 523(a)(2), (4), and (6). On May 6, 1998, Ryan filed an amended complaint seeking the same relief and differing only in certain factual allegations. Kontrick answered the complaint on June 10, 1998. Ryan moved for summary judgment on Counts II-IV seeking to bar Kontrick from receiving his discharge pursuant to §§ 727(a)(2), (3), (4) and (5). Kontrick, in turn,

moved to strike portions of Ryan's 402(M) statement and certain of the attached exhibits. The bankruptcy court entered its original Memorandum Opinion on February 25, 2000, and then later amended the opinion to correct a factual error. The bankruptcy court granted Ryan's motion as to Count I denying Kontrick his discharge and denied summary judgment on Counts II-IV. Further, Kontrick filed a motion to reconsider, which was denied on June 8, 2000. The bankruptcy court entered final judgment on June 13, 2000, and Kontrick filed an appeal.

In Count I Ryan argued, among many other things, that Kontrick should be denied discharge pursuant to § 727(a)(2) because he took his name off of the family bank account yet he continued to deposit his employment checks into that account (the "family account" claim). Kontrick and his wife, Carolyn Kontrick, used to have a joint checking account where Kontrick deposited his salary checks into the account, and Carolyn paid the family expenses out of the account. In 1992 or 1993, Kontrick removed his name from the checking account, but he continued to deposit his salary checks into the account and Carolyn continued to pay the family expenses from the account. In 1997, Kontrick filed for bankruptcy. The bankruptcy court found that Kontrick should be denied discharge because Kontrick deposited his salary into an account on which his wife is the sole signatory, the money transferred into the account is fraudulently transferred to Carolyn because she gave no consideration, and Kontrick made the transfer with the intent to

defraud his creditors. (Exh. 2, at 14.) The bankruptcy court recognized that generally the question of intent will prevent the grant of summary judgment, but that this was not the usual case because Kontrick's intent was clear.

Kontrick raises two grounds in this appeal. First, he argues that Ryan's claim that these deposits into the checking account were a ground to bar his discharge was untimely. According to Kontrick, Ryan filed an amended complaint adding the family account claim as an additional ground after the time for objecting to discharge had expired. Second, Kontrick argues that the bankruptcy court erred when it denied him discharge pursuant to § 727(a)(2) because the deposits to the account were used for family expenses and did not reduce the assets available to creditors and because there was no intent to hinder, delay or defraud his creditors.

## DISCUSSION

### Timeliness Issue

Kontrick argues the family account claim was untimely because Ryan did not allege in the original complaint but only in the amended complaint that was filed outside the strict 60-day period for filing complaints pursuant to FED. R. BANKR. P. 4004(a) ("Rule 4004(a)"). He argues that the bankruptcy court's opinion failed to address the timeliness of the family account claim by wrongly finding that Kontrick had waived this issue by failing to raise it in his motion to strike. He claims that he did object to the timeliness of the family account claim in his motion to strike,

and even if he did not the court wrongly found that he waived his objection because "Rule 4004 is jurisdictional and cannot be waived." (Kontrick Brief, at 10.)

This court will first address whether Kontrick raised his objection to the timeliness of the family account claim in his motion to strike. In his brief to this court Kontrick pieces together quotes and sentences from his motion to strike in an attempt to demonstrate that he made the argument to the bankruptcy court. The court has reviewed Kontrick's motion to strike and finds, like the bankruptcy court, that he did state that there were new allegations in the amended complaint that were not in the original complaint. But, as the bankruptcy court concluded in its memorandum opinion on Kontrick's motion to reconsider, Kontrick "mentions that this allegation was not included in the original complaint . . . [h]owever, he does not continue the argument to any logical conclusion. He never argued that the allegation was untimely or should be struck for any reason." (Exh 11, at 6.) In Kontrick's motion to strike he compared the allegations in the complaint with the allegations in Ryan's motion for summary judgment, memorandum, and Rule 402M statement. The point of Kontrick's motion to strike was that "any allegations in the [sic] Ryan's [summary judgment] memorandum or 402M statement that are not tied to the complaint should be stricken" and not that there were new allegations in the amended complaint that were not in the original complaint. (Motion to strike, at 5.) This court agrees

- 5 -

with the bankruptcy court that Kontrick did not raise this issue in his motion to strike.

As Kontrick did not argue that the family account claim was untimely, the court must next consider whether Kontrick's failure to raise it constitutes a waiver of his objection. With very little discussion, the bankruptcy court held that FED. R. BANKR. P. is not jurisdictional but more akin to a statute of limitations, and thus, by not raising his argument that the checking account claim was untimely sooner, Kontrick waived it. (Exh. 11, at 6.)

Here, Kontrick argues that while the bankruptcy court's finding that Rule 4004 is not jurisdictional does find some support in case law, the majority of cases, especially those from this district, find that it is jurisdictional. He argues because Rule 4004 is jurisdictional, he could not have waived an objection to jurisdiction. To support his argument that Rule 4004 is jurisdictional, Kontrick relies heavily on *In re Kirsch*, 65 B.R. 297, 302 (Bankr. N.D. Ill. 1986). In *Kirsch*, Judge Ginsberg found that the defendant, who had answered the complaint and participated in the trial, did not waive his objection to the timeliness of the complaint because the time limit was jurisdictional and thus could not be waived. *Id.* at 302. Kontrick argues that the bankruptcy court erred when it declined to follow *Kirsch* and the "majority" of courts and instead found that the time limit for discharge objections was not jurisdictional.

As a preliminary matter, discharge and dischargeability are governed by distinct procedural rules. Rule 4004 sets out the procedure for granting or denying discharge under § 727. Rule 4007 governs the determination of dischargeability of a debt under § 523. Both Rule 4004(a) and Rule 4007(c) set forth a strict 60-day deadline for filing a complaint and both rules permit the court to extend the 60-day limit during the initial 60-day period. Further, Rule 9006(b)(3) states that "[t]he court may enlarge the time for taking action under Rules . . . 4004(a) and 4007(c) . . ., only to the extent and under the conditions stated in those rules." Thus, once the 60 days permitted by Rule 4004(a) or 4007(c) have passed, the bankruptcy court cannot extend the time for filing a complaint.

Here, after several extensions of time, Ryan filed his complaint within the 60-day period, but he filed an amended complaint after the 60-day period. Kontrick argues that the family account claim appears for the first time in the amended complaint, while Ryan argues that it was in the original complaint and he just expanded his factual allegations in the amended complaint. The bankruptcy court found that Kontrick waived his objection without a specific finding that the family account claim was timely or not.

Several bankruptcy courts have held that the time limit for filing dischargeability complaints fixed by Rule 4007(c) is jurisdictional, and thus not subject to waiver. *See In re Glover*, 212 B.R. 860, 861 (Bankr. S.D. Ohio 1997); *In re Ham*, 174 B.R. 104,

106-107 (Bankr. S.D. Ill. 1994); *In re Barley*, 130 B.R. 66, 69 (Bankr. N.D. Ind. 1991); *In re Booth*, 103 B.R. 800, 802 (Bankr. S.D. Miss. 1989); *In re Krause*, 114 B.R. 582, 605 (Bankr. N.D. Ind. 1988); *In re Kirsch*, 65 B.R. 297 (Bankr. N.D. Ill. 1986). These cases base their holding that the time limits for filing dischargeability complaints fixed by Rules 4007(c) and 9006(b)(3) are jurisdictional on a finding that this was Congress' intention in drafting the bankruptcy code. These courts argue that this interpretation "accords with the general rule that discharge and dischargeability law and procedure is to be interpreted strictly against creditors and in favor of debtors to promote a debtor's fresh start." *Kirsch*, 65 B.R. at 302-303.

Here, the bankruptcy court, while acknowledging *Kirsch* as the ringleader of the bunch, declined to follow that line of cases and instead cited *European American Bank v. Benedict (In re Benedict)*, 90 F.3d 50 (2nd Cir. 1996) and *Dombroff v. Greene (In re Dombroff)*, 192 B.R. 615 (S.D. N.Y. 1996). The bankruptcy court explained that "[c]ontrary to the Debtor's assertion, this court does not believe the limitations period of FED. R. BANKR. P. 4004 is jurisdictional, but is more akin to a statute of limitations." (Exh. 11, at 6.)

In *Benedict*, the Second Circuit acknowledged the split of authority on this issue and held that the time period imposed in Rule 4007(c) was not jurisdictional and thus subject to waiver, estoppel, and equitable tolling. The *Benedict* court reasoned that statutory filing deadlines are generally subject to the defenses of

waiver, estoppel, and equitable tolling, there was nothing in the Bankruptcy Code that supports a finding that Rule 4007 is any different from a statutory provision that imposes a filing deadline, and there is no controlling policy goal that would be served by holding Rule 4007(c) jurisdictional. *Benedict*, 90 F.3d at 54. Further, in *In re Santos*, 112 B.R. 1001, 1008 (Bankr. 9th Cir. 1990), the Ninth Circuit held that "the timeliness of a dischargeability complaint presents an affirmative defense that must be raised in an answer or responsive pleading . . . If the defense is not raised in the answer or responsive pleading, it is generally waived." Further, in *Farouki v. Emirates Bank International Limited*, 14 F.3d 244, 248 (4th Cir. 1994), the Fourth Circuit found *Santos* to be well reasoned and followed it, specifically finding that Rule 4004(a) is not jurisdictional. *See also, Dombroff*, 192 B.R. 615 ("this Court holds that the time period fixed by FED. R. BANKR. B. 4004 is not jurisdictional in nature."); *In re Begue*, 176 B.R. 801, 804 (Bankr. N.D. Ohio 1995) ("This court thus joins other courts that have viewed the deadline set forth in B.R. 4007(c) not as jurisdictional but rather as a statute of limitations. As such, this statutory filing deadline is subject to the defenses of waiver, estoppel and equitable tolling." (citations omitted)); *In re Welsh*, 138 B.R. 630, 631 (Bankr. M.D. Fla. 1992)(holding that Rule 4007(c) is procedural and not jurisdictional).

Further, other courts, while not explicitly holding that Rule 4004 was not jurisdictional, permitted equitable relief where the court misled the parties as to a filing deadline. *See, e.g., In re Themy*, 6 F.3d 688, 690 (10th Cir. 1993)(holding that when "the court's act affirmatively misleads the creditor as to a deadline . . . the bankruptcy court [is] within its authority to accept [the creditor's] complaint after the sixty-day period expire[s]"); *In re Kennerley*, 995 F.2d 145, 148 (9th Cir. 1993)(holding that a late filed complaint objecting to discharge may be allowed when a court explicitly misleads a party as to a deadline). Since equitable considerations cannot excuse a jurisdictional defect, these cases lend further support that Rule 4004(c) is not jurisdictional.

Although Kontrick argues that the bankruptcy court adopted the "minority" approach, this court disagrees. While the Seventh Circuit has not spoken on this issue, the court finds the authority from the Second, Fourth, and Ninth Circuits persuasive and follows it. By not raising the timeliness of the family account claim in his responsive pleading, Kontrick waived the objection. Therefore, Kontrick waived his argument that the family account claim was untimely.

### The Family Account Claim

Kontrick argues that the bankruptcy court's grant of summary judgment to Ryan on the family account claim in Count I was erroneous. In order to deny a debtor a discharge under

§ 727(a)(2)(A) the objecting party must establish that: (1) the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) the act was done with the actual intent to hinder, delay, or defraud a creditor; (3) the act was that of the debtor; and (4) the act consisted of transferring, removing, destroying or concealing of the debtor's property or permitting any of these acts to be done. *In re Agnew*, 818 F.2d 1284, 1287 (7th Cir. 1987). Further, "[i]n order to justify the refusal of discharge under a section 727(a)(2) transfer, 'it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditor and which was made with fraudulent intent.'" *Id.* at 1289, *citing, 4 Collier on Bankruptcy*, para. 727.02[5] at 727-21 to -22 (15th ed. 1986).

The bankruptcy court acknowledged that Kontrick took his name off of the checking account in 1993, which was outside the one year statutory period, but stated that Kontrick has continued to deposit his paycheck into the account that still bears only his wife's name. The bankruptcy court did not consider this as a "continuing concealment" because the transfers continued into the year prior to the time he filed for bankruptcy. (Exh. 2, at 14.) The bankruptcy court found that "[i]t is undisputed, even admitted, by Kontrick that his salary is being deposited into an account on which his wife is the sole signatory. Any money transferred to this account is fraudulently transferred to [Kontrick's wife] because at the

- 11 -

time of the transfer she gave no consideration." *Id.* (citations omitted). The bankruptcy court found that this evidence established three of the four elements for denial of discharge, and the only remaining question was whether Kontrick had actual intent to hinder, delay or defraud a creditor. The court explained that "[g]enerally, the question of intent will prevent the granting of summary judgment. This case, however, is not the usual case . . . [because] the Debtor's intent is clear." *Id.*

The bankruptcy court relied primarily on testimony from Kontrick's deposition pursuant to the 1993 citation to discover assets where Kontrick "freely admitted he transferred the bank account to Carolyn to prevent his creditors from attaching the funds." *Id.* at 14-15. In that deposition, Kontrick was asked why he made changes to the way he handled his personal finances, including taking his name off of the checking account, and he testified that "what prompted this change was the ridiculous maneuvers that you and your client [Ryan] have put me through in order to collect money which you don't have coming to you." *Id.* at 15. Further, the court cited testimony where Kontrick stated that he changed his finances because "[y]ou can spend your whole life working and then have some client who - some person out there who feels that he is entitled to your money because of some perceived wrong that they claim you have done, and they are then in a position to basically rob you of your life savings." *Id.* He further stated that "there are just thousands and thousands of

thieves out there that are ready to come after you on any pretense and rob you of whatever belongings you might have. So, I felt that this was a way of protecting myself." Last, the bankruptcy court cited testimony where Kontrick stated that "I felt that to have any sort of assets that could possibly be taken away from me would be foolish. So I basically divested myself of everything. In general, I have made an effort to not have any assets in my name." *Id.* Based on all of this testimony, the bankruptcy court found that "[Kontrick's] course of conduct coupled with his testimony proves beyond question that he intended to hinder, delay, or defraud at least Ryan and there can be no doubt that Kontrick, among his other acts, changed his finances and transferred the funds to his wife's account to hinder and delay, and prevent his creditor, Ryan, from collecting his judgment." *Id.* at 16. Thus, the bankruptcy court concluded that Kontrick's discharge must be denied pursuant to § 727(a)(2).

In its opinion on the motion for reconsideration, the bankruptcy court again stated that "[t]here can be no question that the Debtor acted in a manner which violated the statute. . . . Although he may have had the means to pay Ryan, he chose to take his name off of the account and began to pay his earnings into an account over which he had no control." (Exh. 11, at 8.)

The bankruptcy court's grant of summary judgment is a conclusion of law subject to *de novo* review. *In re Jones*, 226 F.3d 917, 920 (7th Cir. 2000). Summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The standard governing summary judgment is clear: '[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment . . . then summary judgment must be granted.'" *Oates v. Discovery Zone*, 116 F.3d 1161, 1175 (7th Cir. 1997) (citing *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir. 1991)).

It is well-recognized that "'exceptions to discharge are to be constructed strictly against a creditor and liberally in favor of the debtor.'" *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992)(quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). Denial of discharge under § 727(a)(2)(a) requires proof of actual intent to hinder, delay, or defraud a creditor. *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989). In determining whether a debtor has acted with intent to defraud, courts should consider the debtor's whole pattern of conduct, and actual fraudulent intent can be inferred from extrinsic evidence. *Id.*

First, Kontrick asserts that under Seventh Circuit law only a transfer that reduces the assets available to creditors will bar

discharge, and that here the bankruptcy court's opinion does not refer to any specific deposits to the account that actually reduced assets available to Kontrick's creditors but instead merely stated that it was "axiomatic" that a transfer from a husband to a wife affects creditors because funds are no longer available. (Kontrick Brief, at 20.) Kontrick deposited his salary into an account that he could not access; there is no question that this transfer reduced the assets were available to his creditors.

Second, Kontrick argues that the bankruptcy court erred by finding an intent to hinder, delay, or defraud in the year before bankruptcy. Kontrick argues that he removed his name from the account in 1993, which was four years before he filed for bankruptcy, and that the citation to discover assets relied upon by the bankruptcy judge also occurred in 1993. He further argues that at the time he made those statements, he was solvent and was able to pay his debts.

It is undisputed that Kontrick took his name off of the account in 1993. After acknowledging that this fact that Kontrick took his name off of the account in 1993 alone is insufficient to bar discharge because it was outside the one year statutory period, the court noted that Kontrick continued to deposit his paycheck into the account which now bears solely his wife's name in the year right before he filed for bankruptcy. The court explained that "[b]ecause the transfers continued into the year prior to filing for bankruptcy, this court need not determine whether there is a

continuing concealment." (Exh.2, at 13, fn. 19.) The court found that "[a]ny money transferred to this account is fraudulently transferred to Carolyn because at the time of the transfer she gave no consideration." After explaining that the question of intent typically prevents the granting of summary judgment, the bankruptcy court held that "[t]his case, however, is not the usual case [because] the Debtor's intent is clear." (Exh. 2 at 14.) The bankruptcy court relied on Kontrick's testimony at the citation to discover assets and his offer of a global settlement with his other creditors besides Ryan. Further, in its opinion denying reconsideration, the bankruptcy court explained that even without the offer of a global settlement, there was sufficient evidence to grant summary judgment.

Considering Kontrick's statements at the citation and his whole course of conduct, the bankruptcy court's finding that Kontrick's intent was clear was appropriate. Kontrick points to no evidence, sworn affidavits, or anything else providing an alternative explanation to why he removed his name from the checking account and continued to deposit his salary into an account that he did not have access to. Instead of paying his creditors, Kontrick purposely put his money where Ryan and his other creditors could not reach it -- and he testified to that under oath. Considering Kontrick's whole pattern of conduct, the bankruptcy court properly found that Kontrick had the intent to hinder, delay or defraud his creditors. See *In re Chavin*, 150 F.3d

726, 729 (7th Cir. 1998). The court has considered Kontrick's other arguments and finds that they lack merit.

The bankruptcy laws are intended to give a fresh start to the honest but unfortunate debtor. *See Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999), *citing Grogan v. Garner (In re Garner)*, 498 U.S. 279, 286-87, 111 S. Ct. 654 (1991). Discharge is a privilege, not a right, and the bankruptcy court properly denied it here.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's grant of summary judgment on Count I is affirmed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: May 30, 2001